UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ADAM M. GLOWKA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:22-cv-49 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| ERIC E. MARIT, | : | Magistrate Judge Caroline H. Gentry |
| | : | |
| Defendant. | : | |

_____

**ENTRY AND ORDER STRIKING PLAINTIFF'S SUR-REPLY (DOC. NO. 11);
DENYING PLAINTIFF'S RENEWED REQUEST FOR COUNSEL (WITHIN
DOC. NO. 9); GRANTING DEFENDANT'S MOTION TO DISMISS (DOC. NO.
6); AND TERMINATING THIS CASE**

_____

This is a case brought *pro se* by Plaintiff Adam M. Glowka ("Glowka") against Defendant
Eric E. Marit ("Marit") that was originally filed in state court and removed to federal court by
Marit. In his Complaint, Glowka brings two causes of action: (1) Claim for Malicious Prosecution;
and (2) Claim for Outrageous Government Conduct. (Doc. No. 4.) Currently pending before the
Court is Defendant's Motion to Dismiss (Doc. No. 6) (the "Motion"), brought pursuant to Federal
Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court **GRANTS** the
Motion, **DISMISSES** the claims with prejudice, and **TERMINATES** this case.

## I.    BACKGROUND

On January 18, 2022, Glowka filed his complaint in the Court of Common Pleas for Preble
County, Ohio. (*See* Doc. No. 3; Doc. No. 4.) Marit is the sole defendant in this case. Glowka and
Marit are the only parties listed in the case caption; the docket from the Court of Common Pleas
for Preble County, Ohio indicates that there is only one defendant (Marit); and, that court only
issued a summons with a copy of the complaint to Marit. (Doc. No. 4 at PageID 90; Court of

Common Pleas, Preble County, Ohio, Docket for Case No. 22CV032383; Doc. No. 3-7 (summons); *see also* Doc. No. 9 (Glowka referencing Marit as "[t]he Defendant in this matter").) On February 16, 2022, Marit filed a Notice of Removal and removed the case from state court to federal court.  (Doc. No. 3.)  No motion to remand was filed, and the time to do so has passed.  *See* 28 U.S.C. § 1447(c).

Glowka acknowledges that Marit "was at all times relevant to this action a prosecuting attorney for the State of Ohio."  (Doc. No. 4 at PageID 91.)  In the Complaint, Glowka alleges that Marit received a report from "the Eaton Police Division" and "convened a Grand Jury" concerning statements made by Glowka's ex-girlfriend, with whom Glowka was engaged in a custody battle. (*Id.* at PageID 97-98.)  Glowka alleges that the statements "were fruits of several videos that [his ex-girlfriend] instructed her daughter … to take, in an attempt to gain custodial status," social security payments, and child support payments.  (*Id.*)  A grand jury indicted Glowka on four felony charges.  (*Id.* at PageID 99.)

Glowka alleges that Marit "failed to consider the veracity of the statements made to the Eaton Police Division"; "[d]ue to Mr. Glowka's prior criminal record, … Marit still pursued an indictment and knew of the potential false statements, preplanned attack or misleading information, or dutifully should have known"; that "[a]n Indictment was returned without any scientific evidence to prove guilt"; and Glowka's "rights to due process of law were violated" and he suffered injuries.  (*Id.* at PageID 98-99.)  Glowka also alleges that his fiancé and two of his children "were '*Selectively*' never charged for a felony for [sic] misdemeanor"; Glowka's "record was used for selective prosecution to become the underlying basis for the *Malice* in the Prosecution"; Marit "either failed to properly investigate the veracity of the complaints, misrepresented facts or had reckless disregard for the truth when [Glowka's criminal case] was

2

presented to the Grand Jury"; Marit "failed to find probable cause to effectuate a constitutional prosecution"; Marit "never offered a better plea deal, even after exculpatory ***BRADY*** evidence was submitted and, due to Mr. Glowka's record, maliciously continued to pursue a conviction"; and Marit "initiated, procured and continued a Malicious Prosecution that was causing an undue hardship on Mr. Glowka in many facets." (*Id.* at PageID 105, 107-08 (emphasis in original).)

The Complaint contains two causes of action: (1) Claim for Malicious Prosecution; and (2) Claim for Outrageous Government Conduct. (Doc. No. 4 at PageID 112.) Glowka alleges that Marit "intentionally and maliciously violated the Fourth Amendment of the US Const.," as well as his "rights to due process of law." (*Id.* at PageID 99, 107, 112.) Glowka sues Marit in Marit's individual and official capacities. (*Id.* at PageID 91.)

On February 23, 2022, Marit filed the Motion, which seeks dismissal of the Complaint in its entirety and with prejudice. (Doc. No. 6.) On March 28, 2022, Glowka filed his Response to the Motion (Doc. No. 9) (the "Response").[1] On April 4, 2022, Marit filed a Reply in support of the Motion (Doc. No. 10) (the "Reply"). The Motion is fully briefed and ripe for review and decision.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this rule "does not require 'detailed factual allegations' … it demands more than an unadorned, the-defendant-

---

[1] Glowka did not timely file his Response, despite Magistrate Judge Caroline H. Gentry issuing a Notice to Glowka, informing him that a motion to dismiss had been filed and that his response must be filed with the Court not later than March 21, 2022 (*see* Doc. No. 8). S.D. Ohio Civ. R. 7.2(a)(2) ("Any memorandum in opposition shall be filed within twenty-one days after the date of service of the motion."). Glowka requested in his Response that "this Honorable Court to [sic] understand his current medical condition, and his inability to make a timely response, and accept this [Response] as timely for good cause shown." (Doc. No. 9 at PageID 136.) The Court informs Glowka that he must abide by the Court's rules, but on this occasion, and in ruling on the merits of the Motion, the Court will accept and consider the Response in ruling on the Motion.

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6) (providing for motions to assert a "failure to state a claim upon which relief can be granted"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not the same as a probability standard, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Thus, if a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true and construe them in a light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55. However, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* at 555-56. "In evaluating a motion to dismiss [a court] may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal quotation marks omitted).

4

Even in cases where the plaintiff is a *pro se* party, basic pleading requirements must be satisfied.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Despite the fact that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and a document filed *pro se* is "to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a *pro se* complaint still "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); *see also Ogle v. Columbia Gas Transmission, LLC*, 513 F. App'x 520, 522 (6th Cir. 2013).

## III.   ANALYSIS

Marit asks the Court to dismiss Glowka's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Marit argues that he is entitled to absolute immunity in his personal capacity and sovereign immunity in his official capacity.  (Doc. No. 6 at PageID 117.)  He also argues that the Complaint fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a) and that there is no cause of action available to Glowka for "outrageous government conduct."  (*Id.*)  In response, Glowka asserts:

> Marit chose to put a Felony warrant out for Glowka's arrest, cause numerous situations, affected Mr. Glowka's status in the Community and Employment, caused the arrest and voluntary surrender of Mr. Glowka, to be booked into jail, and many other harms, all without conducting NO INVESTIGATION, TESTING, CORROBORATING and even failed to consider the source.  From the onset there was pressure from the Police, and because Glowka did not say I [d]idn't do it, [t]he prosecutor figured with maliciousness and Selectivity that Glowka would cop to a plea, as so many others facing four felonies.

(Doc. No. 9 at PageID 137.)  He argues that "[a]bsolute [i]mmunity and [q]ualified [i]mmunity are clear shields to protect Officials when ruining peoples [sic] lives, if a few months later they just decide, 'ahhh, this guy wants a trial, drop it.'"  (*Id.*)

5

### A.  **The Sur-Reply is Stricken**

On April 4, 2022, Glowka filed a sur-reply (Doc. No. 11) (the "Sur-Reply").  Glowka neither sought, nor received, leave of court to make that filing.  The filing violated this Court's rules.  S.D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated [i.e., memorandum in support of a motion, memorandum in opposition, and reply memorandum] are permitted except upon leave of court for good cause shown.").  Therefore, the Court strikes the Sur-Reply.

### B.  **Glowka's Renewed Request for Appointment of Counsel is Denied**

Embedded within his Response is a request by Glowka for the Court to appoint counsel to represent him in this case.  (Doc. No. 9 at PageID 136.)  He acknowledges that this is a renewed request for counsel.  (*Id.*)  On January 19, 2022, prior to removal of the case to federal court, Judge Stephen R. Burns of the Court of Common Pleas for Preble County, Ohio denied Glowka's earlier motion asking that court to appoint counsel to represent him in this civil action.  (Doc. No. 3-6.)

"Appointment of counsel in a civil case is not a constitutional right."  *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (internal quotation marks omitted).  "It is a privilege that is justified only by exceptional circumstances."  *Id.*  "In determining whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself."  *Id.* (internal quotation marks omitted).  "This generally involves a determination of the complexity of the factual and legal issues involved."  *Id.* (internal quotation marks omitted).  Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or have only an extremely slim chance of success.  *Id.*; *Vartinelli v. Shanklin*, No. 98-2018, 205 F.3d 1343 (Table), 2000 WL 145360, at *3 (6th Cir. Feb. 1, 2000).

Having considered the type of case, the nature of the case, the complexity of the facts and the legal issues involved, and Glowka's ability to prosecute his claim, the Court finds that

exceptional circumstances do not exist at this time. Additionally, as shown below, the Court finds that Glowka has no chance of success. Therefore, the Court denies Glowka's renewed request for appointment of counsel. *See, e.g., Vartinelli*, 2000 WL 145360, at *3 (affirming decision to deny motion for appointment of counsel where plaintiff's claims had only an extremely slim chance of success); *Robinette v. Columbus Police Dept.*, No. 2:09-cv-629, 2010 WL 348297, at *2 (S.D. Ohio Jan. 25, 2010) (denying motion to appoint counsel where the case did not present the exceptional circumstances necessary for the appointment of counsel because plaintiff's claims had no chance of success).

### C. The Motion to Dismiss is Granted

#### 1) First Cause of Action: Claim for Malicious Prosecution

Marit argues that the malicious prosecution claim against him in his individual capacity fails because he is entitled to absolute immunity, and it fails against him in his official capacity because it is precluded by sovereign immunity. (Doc. No. 6 at PageID 123-27.) The Court agrees. It is not entirely clear whether the malicious prosecution claim is brought under federal law or state law or both. *See Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2020 WL 5629677, at *19, 45 (S.D. Ohio Sept. 21, 2020) (setting forth elements of malicious prosecution under federal law and under Ohio law). Regardless, the outcome is the same: the claim must be dismissed.

Regarding the claim against Marit in his personal capacity, "[s]tate prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties." *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012). "[U]nder federal law, prosecutors are entitled to absolute immunity from lawsuits arising from 'the duties of the prosecutor in his role as advocate for the state' as well as 'actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lower v. City of Columbus*, No. 2:16-cv-394, 2016 WL 7230853, at *3 (S.D. Ohio Dec. 14, 2016) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272

(1993)); *see also Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (among other types of claims, absolute immunity is appropriate for claims based on a prosecutor's appearance at a probable cause hearing, appearance before a grand jury, evaluation of evidence assembled by the police, preparation for presentation of evidence at trial or before a grand jury, preparation of witnesses for trial, and "even the knowing presentation of false testimony at trial"); *Cady v. Arenac Cnty.*, 574 F.3d 334, 341 (6th Cir. 2009) ("[c]onduct associated with plea bargains has long been held by this court to be so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity") (internal quotation marks omitted). Prosecutors do "not enjoy absolute immunity for 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings,'" although they still may be entitled to qualified immunity. *Id.* (quoting *Buckley*, 509 U.S. at 273). "Absolute prosecutorial immunity is not defeated by showing that the prosecutor acted wrongfully or even maliciously." *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (internal quotation marks omitted). "The decision to prosecute, … even if malicious and founded in bad faith, is unquestionably advocatory." *Id.* (internal quotation marks omitted); *see also Howell*, 668 F.3d at 350 ("[t]he existence or nonexistence of probable cause … is not determinative of whether absolute immunity applies"); *see also Bowman v. Warren Cnty. Regional Jail*, No. 95-6241, 89 F.3d 832 (Table), 1996 WL 343520, at *1 (6th Cir. June 20, 1996) ("[d]etermining to bring a prosecution against one person and not to charge others is the quintessential prosecutorial function, and the claim against [the commonwealth attorney] thus falls squarely within" absolute immunity). While this immunity "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," "the alternative of qualifying a prosecutor's immunity would disserve the broader

8

public interest." *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).

"Like federal law, Ohio law also provides for absolute immunity to prosecutors doing their jobs." *Lower*, 2016 WL 7230853, at *4. Ohio Revised Code § 2744.03(A)(7) states that "[t]he political subdivision, and an employee who is a county prosecuting attorney, … is entitled to any defense or immunity available at common law or established by the Revised Code." The Ohio Supreme Court has held that "prosecutors are considered quasi-judicial officers entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process.'" *Willitzer v. McCloud*, 6 Ohio St. 3d 447, 453 N.E.2d 693, 695 (Ohio 1983) (quoting *Imbler*, 424 U.S. at 430). Initiating a prosecution and presenting the State's case are among those activities entitled to absolute immunity. *Id.*

"The party seeking the benefit of a claim of absolute immunity has the burden of establishing it," and Marit has met that burden here. *Howell*, 668 F.3d at 350. The allegations against Marit in the Complaint involve duties in his prosecutorial role as an advocate for the state. (Doc. No. 4 at PageID 90-91, 97-99, 105-10, 112.) The allegations relate to preparation for the initiation of Glowka's prosecution or judicial proceedings and are intimately associated with the judicial phase of the criminal process. *Buckley*, 509 U.S. at 272-73; *Imbler*, 424 U.S. at 430; *Willitzer*, 453 N.E.2d at 695. Therefore, Marit is immune from the claim against him in his personal capacity. *Cady*, 574 F.3d at 342 ("[a]bsolute immunity defeats the suit at the outset") (internal quotation marks omitted).

Regarding the claim against Marit in his official capacity, "claims against prosecutors in their official capacity are claims against the state and are barred by the Eleventh Amendment." *Smith v. Rybek*, No. 2:11-cv-777, 2012 WL 3025102, at *3 (S.D. Ohio July 24, 2012); *see also Cady*, 574 F.3d at 342 (explaining that, "[i]n an official capacity action, the plaintiff seeks damages

not from the individual officer, but from the entity for which the officer is an agent," and "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity"). As the Sixth Circuit has explained, although "[a]bsolute immunity is a personal defense that is unavailable in an official-capacity action," "immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Cady*, 574 F.3d at 342. Here, Marit was "acting as an agent of the state" and the "suit against him in his official capacity is barred by the Eleventh Amendment." *Id.* Therefore, the malicious prosecution claim against Marit, both in his individual and his official capacity, must be dismissed.

### 2) Second Cause of Action: Claim for Outrageous Government Conduct

Glowka's second cause of action is for "outrageous government conduct." The Court tends to agree with Marit's assertion in the Motion that "there is no cause of action available to Plaintiff for 'outrageous government conduct'" in this civil case; it "is not a legitimate claim." (Doc. No. 6 at PageID 117, 122.) "Outrageous government conduct" may be a defense in a criminal case, where "a defendant argues that the government's involvement in creating his crime (*i.e.*, the means and degrees of inducement) was so great 'that a criminal prosecution for the [crime] violates the fundamental principles of due process.'" *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999) (quoting *United States v. Russell*, 411 U.S. 423, 430 (1973)). To succeed in the defense, there at least must be "outrageous police conduct that shocks the conscience." *Id.* at 975; *Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019) (the defense of outrageous government conduct is "rarely—if ever—found" and "arises when the government acts so outrageously that it shocks the conscience"). In *Warwick*, the Sixth Circuit Court of Appeals reiterated that outrageous government conduct in a criminal investigation may violate the Due Process Clause of the Fifth Amendment, while recognizing that the proper remedy would be dismissal of the resulting

10

indictment.  *Warwick*, 167 F.3d at 973 n. 5, 974.

Yet, even if "outrageous government conduct" is a recognized cause of action, the claim here fails.[2]  As an initial matter, it would fail for the same reasons that the malicious prosecution claim fails, as set forth above.  Moreover, the factual allegations underlying the alleged "outrageous government conduct" rarely involve Marit.  (*See* Doc. No. 4.)  Even accepting the factual allegations of the Complaint as true and construing them in a light most favorable to Glowka, they do not rise to the level of demonstrating that Marit acted "so outrageously that it shocks the conscience."  *Monea*, 914 F.3d at 419; *see also Kroemer v. Tantillo*, No. 1:17-cv-67, 2017 WL 6409148, at *7 (W.D.N.Y. Sept. 21, 2017) (in an action filed under 42 U.S.C. § 1983, finding that a potential outrageous-government-conduct claim would have failed because the alleged conduct did not rise to the level of shocking the conscience).  Therefore, Glowka's other claim must be dismissed as well.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court **STRIKES** the Plaintiff's Sur-Reply (Doc. No. 11); the Court **DENIES** Plaintiff's renewed request for appointment of counsel (within Doc. No. 9); the Court **GRANTS** Defendant's Motion to Dismiss (Doc. No. 6); the Court **DISMISSES, WITH PREJUDICE,** claims brought against Marit; and the Court **TERMINATES** this case.  The Clerk of Court is instructed to terminate the case on the Court's docket.  The Court notes for Glowka that this Order, by itself, does not preclude him from attempting to pursue a claim or claims in a separate lawsuit against anyone other than Marit.

---

[2] The Court has been unable to find a Sixth Circuit case that either recognizes such a claim or holds that such a claim is not a recognized cause of action.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, April 8, 2022.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE